UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONTINENTAL CASUALTY COMPANY,

     Plaintiff,

vs                                  Case No: 09-11598
                                      Honorable Victoria A. Roberts

MICHIGAN CATASTROPHIC CLAIMS
ASSOCIATION,

     Defendant.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

This matter is before the Court on cross motions for summary judgment filed by Plaintiff Continental Casualty Company ("Continental") and Defendant Michigan Catastrophic Claims Association ("MCCA").  The only issue before the Court now, is whether MCCA must accept premium payments from Continental that Continental collected from its insured, Avis Rent-a-Car, Inc. ("Avis"), but failed to remit to MCCA until several years after they became due.

The Court held a hearing on June 5, 2012.

The Court holds that MCCA must accept Continental's late-tendered premium payments.  Continental's motion for summary judgment is **GRANTED**.  MCCA's motion for summary judgment is **DENIED**.

1

## II.     BACKGROUND AND PROCEDURAL HISTORY

The facts of this case are straightforward and not in dispute.  On December 31, 2000, Continental and Avis entered into a Michigan motor vehicle accident insurance policy (the "Policy") effective December 31, 2000 to December 31, 2001.  On June 26, 2001, an Avis automobile covered by the Policy struck and seriously injured Leroy Owens as he rode his bicycle.  Pursuant to the Michigan No-Fault Act, M.C.L. § 500.3101, *et seq.,* Continental became liable to pay personal protection insurance ("PIP") benefits to Mr. Owens for the remainder of his life.  Continental has paid over $1,200,000 in PIP benefits to Mr. Owens thus far.  Continental's liability for these benefits is not in dispute.

It is also undisputed that Continental was a member of the MCCA at the time of the accident.  As discussed in greater detail below, the MCCA is a statutorily created nonprofit association whose primary purpose is to reimburse members for losses sustained under PIP coverages beyond an amount set by statute.  All insurers writing personal protection no-fault insurance in Michigan are required to be members of the MCCA.  Additionally, the MCCA is required to charge all members an annual premium.

On April 28, 2009, Continental brought this lawsuit against the MCCA alleging that the MCCA must indemnify it for the cost of PIP benefits paid to Mr. Owens in excess of $250,000, the statutory threshold for indemnification at the time of the accident.  At that time, Continental believed that it had paid all premium assessments owed to the MCCA.  The main issue presented by the initial pleadings was whether the Policy contained a $250,000 deductible, or whether the deductible was the total of any claims (a "full-fronting policy").

2

After suit was filed, however, Continental discovered that it had not paid the MCCA premiums under the Avis Policy for 2000-05.  Continental says that nonpayment was due to a mistake; the premiums were inadvertently miscoded in its computer system as "liability," rather than "no fault."  To cure, Continental wired $1,751,000 to the MCCA on December 25, 2009.  A letter dated January 8, 2010 stated that the wire "represents a partial assessment payment for the Avis automobiles for the years 2000-2005."  A second letter dated February 4, 2010 enclosed a check in the amount of $19,179.71, which counsel for Continental stated "represents the remainder of the assessment payment for the Avis automobiles insured by [Continental] from 2000 to 2005."

On February 15, 2010, the Board of Directors of the MCCA met to decide if it would accept Continental's late tender of premium payment.  The decision was to reject the payment.  On February 17, 2010, the MCCA wired the funds back to Continental.

On March 5, 2010, Continental filed its First Amended and/or Supplemental Complaint (Doc. 22) seeking a declaratory judgment that the MCCA must accept the late tender of premium.  The MCCA defended saying that it has discretion to reject late premium payments.

Whether the MCCA must accept the late premium is the sole issue before the Court.  If the Court finds that the MCCA must accept Continental's late premium payment, the remaining issue is whether the MCCA must reimburse Continental for amounts it pays to Mr. Owens in excess of $250,000.

3

## III.    ANALYSIS

### A.    Standard of Review

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits.  *Federal Ins. Co. v. Hartford Steam Boiler Insp. and Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005)**.**  "The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Lee v. City of Columbus*, 636 F.3d 245, 249 (6th Cir. 2011).  "[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate." *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005).  However, summary judgment is particularly appropriate where "the case turns upon an issue of law, such as the construction of a statute."  *Salazar v. Brown*, 940 F.Supp. 160, 161 (W.D. Mich. 1996).

### B.    The Michigan No-Fault Act and the MCCA

The Michigan No-Fault Insurance Act is unique among no-fault regimes; it provides for unlimited lifetime PIP benefits to accident victims.  M.C.L. § 500.3101, *et seq.*  The unlimited PIP coverage is mandatory for all registered owners of motor vehicles in the state.  *Id.*  Therefore, insurance companies writing automobile insurance in Michigan must provide unlimited PIP coverage to policyholders.

The Michigan Legislature created the MCCA in 1978 out of concern that the No-

4

Fault Act's provision granting unlimited lifetime PIP benefits "placed too great a burden

on insurers, particularly small insurers, in the event of 'catastrophic' injury claims." *In re*

*Certified Question: Preferred Risk Mutual Ins. Co.*, 449 N.W.2d 660, 661 (Mich. 1989)

("*Preferred Risk*").  In response to these concerns, the Legislature created the MCCA

"to indemnify member insurers for losses sustained as a result of the payment of

personal protection insurance benefits beyond the 'catastrophic' level . . . ." *Id.*; M.C.L.

§ 500.3104.  The MCCA was designed to spread the risk of catastrophic claims among

all insurers writing automobile policies in Michigan.

Membership in the MCCA is mandatory.  The statute states: "[e]ach insurer

engaged in writing insurance coverages . . . within this state, as a condition of its

authority to transact insurance in this state, shall be a member of the [MCCA] and shall

be bound by the plan of operation of the [MCCA]."  M.C.L. § 500.3104(1).  An insurer

may withdraw from the MCCA "only upon ceasing to write insurance . . . ." *Id.* §

500.3104(3).

The enabling statute also imposes mandatory duties upon the MCCA.  For one, it

requires the MCCA to indemnify members for losses above a statutory threshold.  The

relevant portion reads: "The association *shall provide* and each member *shall accept*

indemnification for 100% of the amount of ultimate loss under personal protection

insurance coverages in excess of the following amounts . . . ." *Id.* § 500.3104(2)

(emphasis added).  The threshold at the time of Mr. Owens' accident was $250.000.00.

*Id.* § 500.3104(2)(a).

The MCCA also must charge and accept premium payments.  The statute

provides that the MCCA shall "calculate and charge to members of the association a

5

total premium sufficient to cover the expected losses and expenses of the association."

*Id.* § 500.3104(7)(d).  The MCCA also shall "[r]equire and *accept* the payment of

premiums from members of the association as provided for in the plan of operation."  *Id.*

§ 500.3104(7)(3) (emphasis added).  This mandatory language is repeated in the

MCCA's Plan of Operation which binds all members.

### C.    The Concept of Spreading the Risk

The MCCA would be unable to fulfill its statutory purpose if the membership and

indemnification provisions were not mandatory.  As the Michigan Supreme Court

explained in *Preferred Risk*, the MCCA was created to minimize the risk of catastrophic

claims on small and mid-size insurers:

> The Legislature recognized that while such claims might be rare, they are also
> unpredictable, and equally as likely to strike a small or medium-sized insurer as
> they are a large insurer. The obvious problem is that the small or medium-sized
> companies have substantially fewer cars over which to spread the costs of
> potential losses, which means that the costs of providing unlimited medical and
> other benefits is higher per car for such companies, putting them at a competitive
> disadvantage in the state's insurance market. In addition to this competitive
> disadvantage, the Legislature considered the practical "business difficulties"
> confronting all insurers as a result of such possible catastrophic claims, such as
> the difficulty in determining the amount of reserves to keep on hand. It was
> thought that the creation of such an association of insurers would alleviate the
> competitive inequity of these catastrophic claims by spreading their cost
> throughout the industry, and also increase the statistical basis for prediction of
> the overall cost of such claims, making the management of these liabilities
> easier.  *Preferred Risk*, 449 N.W.2d at 661, n.2.

Thus, the MCCA acts as a reinsurer for member insurance companies.  *Id.*

Simply put, if large insurance companies could choose to opt out of participation

in the MCCA, the MCCA could not effectively spread the cost of catastrophic claims

throughout the industry.  *Preferred Risk* explicitly recognized that mandatory

participation is necessary to the concept of spreading the risk: "The [MCCA's] provision

6

of indemnification, and the insurer's acceptance of such indemnification, is obligatory. In order to ensure an adequate pool of funds to cover [catastrophic] claims, members are prohibited . . . from spreading the risk of catastrophic claims to private reinsurers or self-insuring against such risk." *Id.* at 662, n. 4.

In addition, the MCCA could not achieve its statutory purpose if it were permitted to exercise discretion to determine which claims to reimburse. The risk that such a decision would be motivated by improper considerations is too great. As Continental points out, this danger is especially evident with respect to late premium payments. If the MCCA only accepts late premium payments from insurers that it knows do not have outstanding PIP claims, it achieves a financial benefit without a corresponding transfer of risk. This would amount to a windfall for the MCCA, and defeat the concept of spreading the risk. Similarly, if the MCCA is permitted to refuse a late premium payment from an insurer with an outstanding PIP claim, it achieves a windfall by leaving the risk with the member insurer. In short, if the MCCA is permitted to pick and choose when to take on risk, the intent of the Michigan Legislature to spread the risk throughout the industry is defeated.

The MCCA enabling statute establishes a mandatory reimbursement regime for auto insurers doing business in Michigan. As explained by the Michigan Supreme Court in *Preferred Risk*, the mandatory nature of the MCCA is necessary for it to achieve its purpose. Further, a statutorily-created entity "can exercise only those [powers] expressly or impliedly conferred by statute." *Sebewaing Ind. v. Village of Sebawaing*, 60 N.W.2d 444, 446 (Mich. 1953). Thus, if the MCCA is to prevail, it must prove that its refusal of Continental's late premium payment was proper despite the mandatory

7

indemnification provision of the statute.  The Court now turns to that issue.

### D.    The MCCA Does Not Have Statutory Authority or Discretion to Refuse Late Premium Payments

The MCCA enabling statute and its Plan of Operation require it to charge and accept premium payments in consideration for indemnification.  As explained above, this regime is mandatory upon member insurance companies and the MCCA.  The statute sets forth three basic duties: (1) each insurer writing no-fault policies must be a member of the MCCA; (2) each member must pay annual premiums to the MCCA; and (3) the MCCA must accept the premiums and provide indemnification.  M.C.L. § 500.3104, *et seq.*

Section 3104(8) of the enabling statute grants the MCCA certain enumerated powers; these powers do not allow the MCCA to reject a tendered premium.  M.C.L. § 500.3108(a)-(g).  Further, Section 11.02 of the Plan of Operation lists actions the MCCA may take when a member fails to timely pay a premium, including offsetting the amount of past-due payments against any reimbursement payments, instituting legal action, and invoking the assistance of the Commissioner of Insurance.  The Plan of Operation does not explicitly authorize the MCCA to reject a late premium payment.

On its face, the MCCA enabling statute does not permit the MCCA to refuse to accept late premiums, despite expressly listing other remedies it has in the event of a delinquent payment.  Counsel for the MCCA admitted as much at oral argument.  Therefore, if the MCCA is to prevail, the right to reject must be implied by the statute.

The MCCA says the right to reject late premiums is implied.  *See Sebawaing*, 60

8

N.W.2d at 446 (holding that a statutorily-created entity may exercise powers "impliedly conferred by statute").  First, the MCCA notes that among the specific enumerated powers granted to the MCCA is the right to calculate and charge premiums.  *Id.* § 500.3107(d).  The MCCA says another provision, Section 3104(8)(g), is the source of its right to reject premium payments.  That provision allows the MCCA to "[p]erform other acts not specifically enumerated in this section that are necessary and proper to accomplish the purposes of the association and that are not inconsistent with this section or the plan of operation."  *Id.*  Similarly, the Plan of Operation provides that "[t]he Board may authorize the taking of such other action as it deems proper and appropriate . . . ."  Plan of Operation § 11.02.

The MCCA argues that to ensure that members pay premiums when due, the MCCA must have the right to reject late premium payments tendered after catastrophic PIP claims have already occurred.  The MCCA says this right is necessary to achieve its statutory purpose, because if members pay premiums only after learning of catastrophic claims, the risk of such claims is not shared by the entire industry as contemplated by the Legislature, but rather is borne only by the members that receive such claims.  The MCCA says that if members withhold premium payments until a catastrophic claim arises, the concept of spread the risk is defeated.

The Court agrees with the MCCA; if members only make premium payments when a catastrophic claim arises, the MCCA could not achieve its purpose of spreading risk throughout the industry.  However, as explained above, allowing the MCCA to accept delinquent payments from members with no catastrophic claims pending, but to refuse delinquent payments from members with catastrophic claims pending, also

9

defeats the concept of spreading the risk.  Indeed, the record reflects that the MCCA regularly accepts late premium payments -- including some that are several years past due -- where the failure to pay was due to unintentional error, or even no reason at all.

The Court believes that the MCCA does not have discretionary authority to reject premium payments for four reasons: (1) the Michigan Legislature clearly intended the indemnification regime to be mandatory on all parties; (2) the Supreme Court of Michigan held in *United States Fidelity Ins. & Guaranty Co. v. MCCA*, 795 N.W.2d 101, 113 (Mich. 2009) ("*Fidelity*"), that the "necessary and proper" clause of Section 3104(8)(g) must be interpreted narrowly; (3) the MCCA has other means available to recover delinquent premiums; and (4) membership in the MCCA is mandatory for insurance carriers doing business in Michigan and obligates the insurer to pay premiums.

First, as explained in greater detail in the previous section, Continental is a mandatory member of the MCCA.  M.C.L. § 3104(1).  The MCCA is required to charge and accept premiums from members, and to indemnify members.  *Id.* §§ 3104(7)(d),(e). The statutory purpose of the MCCA -- to spread risk throughout the industry -- would be defeated if members or the MCCA had discretion to not adhere to the statutory scheme. *See Preferred Risk*, 449 N.W.2d at 661-62.  The system could not function as contemplated by the Legislature if members have discretion to opt out by not making premium payments, or if the MCCA has discretion to not indemnify member claims.

Even if the MCCA could refuse to accept Continental's late premium, though, it would not have the effect of removing Continental from the MCCA.  Indeed, Continental continues as a member today of the MCCA, and makes premium payments.

10

Continental is required by statute to be a member; its relationship with the MCCA must continue so long as it writes personal protection no-fault policies in Michigan.

Under a traditional contract of insurance, failure to pay premiums renders the contract void, and nullifies the insurer's duty to provide coverage.  But the MCCA is not an insurance company and is not subject to insurance laws.  *See* M.C.L. § 3104(1) ("Except as expressly provided in this section, the association is not subject to any laws of this state with respect to insurers. . . ."); *Fidelity,* 795 N.W.2d at 110.  It exists solely to indemnify no-fault insurers for PIP benefits paid in excess of the statutory threshold. *Id.*  Thus, the only effect of the MCCA's rejection would be to punish Continental by rendering it liable for all of Mr. Owens' claim.  However, the Court does not see why Continental should be punished when it does not appear to be more culpable than the dozens of other insurance companies from which the MCCA accepted late premiums over the years.  MCCA's decision not to accept Continental's late premium payment would be acceptable under traditional insurance law principles, but it is simply not consistent with the mandatory reimbursement regime that the Legislature intended.

Second, the Michigan Supreme Court has held that the necessary or proper clause of section 3104(8)(g) of the MCCA's enabling statute must be interpreted narrowly.  In *Fidelity*, the MCCA argued that it could deny reimbursement to members if it deemed the indemnification amount to be unreasonable.  The Supreme Court disagreed, holding that the statutory provision granting the MCCA authority to perform acts that are necessary or proper to accomplish the purposes of the association did not give the MCCA the power to decline indemnification on the basis of the reasonableness of the indemnification amount.  795 N.W.2d at 113.

11

The Court in *Fidelity* stated:

> [T]his section does not give the MCCA carte blanche to simply avoid a member insurer's agreement that it finds unreasonable. The power granted under § 3104(8)(g) is limited to accomplishing the "purposes of the association." More importantly, the exercise of this power cannot be "inconsistent with this section or the plan of operation." *Id.*
>
> *Id.*

The court held that the ability to review claims for reasonableness would not be consistent with the MCCA's purpose to provide prompt and efficient provision of indemnity.  *Id.*

The Court went on to conclude that Section 3104(8)(g), the necessary or proper clause, must be interpreted narrowly:

> Section 3104(8)(g) allows the MCCA to fulfill the specific requirements of the statute. Accordingly, we interpret § 3104(8)(g) as granting the MCCA the limited power to further its purpose of prompt and efficient indemnification of its members. To interpret that section as granting any further power, such as the power to decline indemnification on the basis of the reasonableness of the indemnification amount, would be inconsistent with the Legislature's intent.
>
> *Id.*

The Court finds that interpreting Section 3104(8)(g) to allow the MCCA to reject late premium payments would be inconsistent with the Legislalure's intent that the MCCA provide mandatory indemnification.  Further, it would contradict the requirements of the statute, which require the MCCA to accept premiums and provide indemnification.

Third, rejection of Continental's late tender of premium is not necessary or proper because the MCCA may exercise other means to ensure payment of premiums.  First, the MCCA may sue in the name of the association.  M.C.L § 500.3104(8)(a).  If the MCCA was so concerned about premiums owed by Continental, why did it not sue

12

Continental for a money judgment before the six year statute of limitations lapsed? Surely, the MCCA has the resources to keep track of delinquent premium payments, and to prosecute those claims when necessary.  Even if the statute of limitations lapses, as apparently it did in this case, the MCCA's Plan of Operation provides other remedies. For example, the MCCA may offset the past due amount against any current or future indemnification payments owed to the member.  MCCA Plan of Operation § 11.02.  It may also "invok[e] the assistance of the Commissioner [of Insurance] with respect to such action as may be permitted under the Michigan Insurance Code."  *Id.*

At oral argument, counsel for the MCCA admitted that the MCCA has the power to audit its members to ensure they are paying all premiums owed.  It further argued, though, that a large-scale audit program of all its members would be prohibitively expensive.  Counsel said that auditing its members would add tremendous cost to an already financially strained program.  Despite admitting that it does not regularly audit its members, the MCCA also admitted that the organization operates on an honor system; members self-report the number of car-years of insurance they write, and the MCCA invoices them accordingly.

The MCCA says that an adverse decision here would force it to implement an audit program.  But, perhaps such a program is necessary, to avoid these types of disputes in the future.  It is difficult for the Court to give much weight to the MCCA's argument -- that it must have the power to reject Continental's premium because one of the statutory remedies, to sue to recover payment, is no longer available because the statute of limitations has passed -- when the MCCA made no effort to determine whether it was owed unpaid premium within the limitations period.  The "honor system"

13

is not a reliable method for the MCCA to collect premiums, especially when dealing with millions of dollars annually from each member.  How many members currently owe delinquent premiums that the MCCA does not even know about?  The honor system makes this question impossible to answer.  Perhaps recovery of unpaid premiums as a result of a large-scale audit program would make up for the expense of instituting the program.

The Court is also unsure why the MCCA has never pursued another remedy provided for in the Plan of Operation: invoke the assistance of the Commissioner of Insurance.  Plan of Operation § 11.02.   Although it is unclear exactly what sort of action the Commissioner would take in the event a member failed to pay a premium, the parties admitted at oral argument that suspending or revoking an insurer's license to write policies in Michigan is likely within his power.  Surely a delinquent insurer, when faced with even the mere possibility of license suspension or revocation, would pay past-due premiums in order to continue to write policies in Michigan.

The Court is not convinced that rejection of Continental's late premium was necessary or proper when these other remedies were available and never invoked.  The remedies contemplated by the enabling statute and Plan of Operation are adequate to ensure timely payment of premiums.  The MCCA's argument -- that it needs to have the power to reject late premiums -- is not well taken when it did not pursue explicit, available statutory remedies.

Lastly, membership in the MCCA is mandatory for insurers doing business in Michigan, and obligates insurers to pay premiums to the MCCA.  The mandatory nature of the insurance regime is likely one reason why the enabling statute does not address

14

the MCCA's power to reject premium payments.  Consistent with mandatory membership, the statute discusses the MCCA's options for *collecting*  -- not *rejecting* -- delinquent premiums.  It would have been very easy for the Legislature to legislate that failure to timely pay a premium prevents a member from receiving MCCA indemnification; however, there is no such provision.  The mandatory membership provision, combined with the conspicuous absence of a provision allowing the MCCA to reject late premiums, convinces this Court that the Legislature did not intend for the MCCA to have the power to reject premiums.

As counsel for Plaintiff persuasively put it at oral argument, the MCCA cannot have an implied power to reject where there is an express provision requiring acceptance.  An implied power cannot trump an express contrary statutory provision. The Court cannot reconcile Defendant's argument with the language of the statute.

### E.    The Cases Cited by the MCCA Are Not On Point

The MCCA says three cases support its position that it has discretionary authority to reject a late premium payment.  Each case is distinguishable.

Defendant relies heavily upon a Michigan Court of Appeals case, *Liberty Mutual Ins. Co. v. MCCA*, 638 N.W.2d 155 (Mich. Ct. App. 2002), which it says is directly on point.  In *Liberty Mutual*, the Court of Appeals affirmed a lower court judgment granting summary judgment in favor of the MCCA and against an insurer attempting to seek reimbursement for PIP benefits it paid.  In reaching its conclusion, the court discussed untimely premium payments.  It said: "In essence, plaintiff is requesting that an insurance claim be paid where no timely premium was paid, where plaintiff attempted to pay the premium after it was due, and after the insurance claim was made.  Plaintiff's

15

argument simply cannot withstand scrutiny."  An examination of the case as a whole reveals that this passage is dicta.

In *Liberty Mutual*, the plaintiff insurance company issued a California insurance policy to California residents to insure their California vehicles.  The insureds then moved to Michigan and stayed for more than thirty days without registering their vehicles in Michigan or acquiring Michigan no-fault insurance, contrary to the provisions of the Michigan no-fault act.  While in Michigan, the insureds' son struck a motorcyclist, rendering him a paraplegic.  The insurance company became liable for PIP benefits in excess of the statutory threshold for reimbursement by the MCCA.

Unfortunately for the plaintiff insurance company, the Michigan Supreme Court held in *Preferred Risk* that the MCCA is not required to reimburse member insurers for losses paid to insureds who are not considered residents of Michigan.  449 N.W.2d at 661 ("[W]e conclude that § 3104(2) requires indemnification only when the member insurer has paid benefits in excess of $250,000 under a policy *which was written in this state* . . .") (emphasis added).  In an attempt to secure MCCA reimbursement anyway, the insurance company decided to try a trick: it sued its insureds to reform the California policy into a Michigan policy, retroactive to a date just days before the accident.  Then, more than five years after the accident, and after the insurance contract had been reformed, the insurance company tendered a premium to the MCCA, and asked the MCCA for indemnification.  The MCCA rejected the premium, and the insurance company sued.

The trial court recognized that the insurance company was attempting an end-run around the residency requirements of *Preferred Risk* and ruled in favor of the MCCA.

16

The court noted that "to rule in favor of plaintiff would be a signal to other members who pay MCCA premiums that if the situation arose where payment was based on an out-of-state policy, the member could merely reform the policy and predate the dates of coverage so the policy could then comply with M.C.L. § 500.3102(1)." *Liberty Mutual*, 638 N.W.2d at 157. The Court of Appeals affirmed.

Although the Court of Appeals mentioned the insurance company's attempted late tender of premium, its holding focused on the egregious facts surrounding the reformation of the insurance contract. The court stated: "To interpret M.C.L. § 500.3104 as requiring indemnification *in a circumstance such as this* where plaintiff has reformed the insurance policy would circumvent the statute and lead to an unreasonable result." *Id.* at 160 (emphasis added). The court's choice of words indicates that its holding is limited to the egregious facts of that case.

The *Liberty Mutual* court recognized that to allow an insurer to reform an out-of-state contract into a Michigan one in order to receive reimbursement from the MCCA would destroy the insurance pool and defeat the concept of spreading the risk. This is because the premiums the MCCA charges its members are calculated based solely upon the number of policies written in Michigan. Out-of-state policies are not counted, and therefore, do not contribute to the pool of funds available to reimburse catastrophic PIP claims.

Reformation is not before this Court. The facts of *Liberty Mutual* presented a legitimate risk that a ruling in plaintiff's favor would destroy the insurance pool; that is simply not the case here. As explained above, there are other methods by which the MCCA can collect delinquent payments, such as filing a lawsuit or offsetting

17

reimbursements by the amount of premium payments owed.

*Liberty Mutual's* holding -- that a member insurer may not reform an out-of-state policy into a Michigan policy for the purpose of seeking reimbursement from the MCCA -- is inapplicable to the facts of this case; *Liberty Mutual* does not control.

The MCCA also relies on a recent case from this district, *Old Republic Ins. Co. v. MCCA*, No. 08-12533, 2009 WL 3152960 (E.D Mich. Sept. 29, 2009). The issue before the court was whether the MCCA was obligated to reimburse the insurance company for PIP benefits paid in excess of the statutory limit when the policy transferred the risk to the insured, a so-called "fronting policy." The court concluded that it did not need to reach this issue though, because the insurer failed to establish that it paid premiums on the vehicle in question.

In reaching its conclusion, the court cited dicta from *Liberty Mutual* that "failure to pay a premium to the MCCA disqualifies the member from receiving MCCA indemnification." *Id.* at *4, *citing Liberty Mutual*, 482 Mich. at 414. The issue confronting this Court now -- whether the MCCA must accept a late premium payment -- was not even before the court in *Old Republic*. The insurance company did not attempt to make a late payment to the MCCA; rather, it produced documents that allegedly supported its claim that the premiums had already been paid. The court disagreed. Thus, the court did not decide the issue now before this Court.

On appeal, the Sixth Circuit held that the district court erred in holding that there was no genuine issue of material fact as to whether the insurer paid premiums. *Old Republic Ins. Co. v. MCCA*, No. 10-2409 (6th Cir. May 2, 2012). It remanded the case to the district court to resolve the factual disputes. In doing so, it recited the dicta from

18

*Liberty Mutual* that Defendant relies so heavily upon: "'an insurer's failure to pay the premium as required by Michigan no-fault law prevent[s] an insurer from being indemnified by the MCCA.'" *Id.*, quoting *Liberty Mutual*, 638 N.W.2d at 158-59.  This passage is not the holding of the case.  The Sixth Circuit did not decide whether the MCCA must accept late premium payments.  As such, the Court does not find this case persuasive.

Lastly, the MCCA relies upon a summary order of the Michigan Supreme Court issued in *United Services Auto. Ass'n v. MCCA*, No. 141867 (Mich. April. 6, 2011) ("*USAA*").  Without explaining its reasoning, the Michigan Supreme Court vacated an order of the Michigan Court of Appeals and reinstated the Washtenaw County Circuit Court's grant of summary disposition for the MCCA.

Like *Old Republic*, *USAA* did not involve a late tender of premium to the MCCA, so there was no decision on the precise issue before this Court.  The issue was whether the MCCA must indemnify an insurer which inadvertently failed to pay a premium on a particular vehicle, despite the fact that it paid premiums on other vehicles owned by the insured.  The Washtenaw County Circuit Court, in an oral opinion, found *Liberty Mutual* controlling and entered summary disposition in favor of the MCCA.  The Court's oral opinion reads:

> I think *Liberty Mutual* -- my reading of *Liberty Mutual* is consistent with [the MCCA's], and . . . I don't think [the MCCA is] obligated to pay in this case . . . . But that's my reading.  I think it's a harsh result.  I'm not sure it's a fair result, but I think it's . . . the result I have to reach based on *Liberty Mutual*.

*See* Nov. 24, 2008 Washtenaw Cnty. Cir. Ct. Tr., attached to MCCA's Br. as Ex. U, at 29.  In addition to not addressing the issue before this Court, the trial court opinion

19

clearly does not have precedential value.

After the Michigan Court of Appeals affirmed based upon different reasoning involving the insured's out-of-state residence, the insurer filed an application for leave to appeal to the Supreme Court of Michigan. The Supreme Court issued the following order:

> The application for leave to appeal the June 22, 2010 judgment of the Court of Appeals is considered, and . . . in lieu of granting leave to appeal, we VACATE the June 22, 2010 judgment of the Court of Appeals and we REINSTATE the Washtenaw Circuit Court's order of December 8, 2008, granting summary disposition to the [MCCA].

Defendant says that this summary order means "the Supreme Court held that the Washtenaw County Circuit Court had correctly ruled that USAA's failure to pay a premium defeated its indemnification claim, regardless of the residency issue."

Continental correctly points out that this Supreme Court order is no precedent at all. It contains no reasoning for its decision, and no statement of facts. *See People v. Crall*, 510 N.W.2d 182, 183 n.8 (Mich. 1993). Nor does it express an opinion on how the issue should be decided, or adopt by reference another published opinion. *Mullins v. St. Joseph Mercy Hospital*, 722 N.W.2d 666, 669 (2006), *rev'd on other grounds* 480 Mich. 948 (2007). The Washtenaw Circuit Court's opinion is not published and not readily available, and the Supreme Court did not state that it was incorporating it. Accordingly, it does not control here.

**F.     The MCCA Can Not Treat Continental Differently Than Other Members From Which It Accepted Late Premium Payments**

At oral argument, the Court asked counsel for the MCCA how it had handled

delinquent premiums in the past.  Counsel stated that if there was no pending

catastrophic claim, the MCCA would simply invoice the member the amount of the late

payment, together with a late fee.  Later, though, when pressed to distinguish this case

from others where the MCCA had accepted late premiums, counsel suggested that

Continental's conduct in "stonewalling" the MCCA for years after the MCCA suggested

Continental had not paid its premium on the Avis policy may have influenced the

Board's decision to vote to reject the late premium.  Thus, counsel took somewhat

inconsistent positions on whether the presence or absence of a pending catastrophic

claim was the MCCA's sole consideration for deciding whether to accept late premiums.

    In the MCCA's response brief, though, it suggests that the Board may consider a

variety of factors to decide on a case-by-case basis whether to reject a late premium

payment.  Def. Resp. Br. p. 15 ("Continental's facts were unique and, after careful

consideration, the board decided to reject the late payment based on the facts before

it.").  The only factor the Court can see that makes these facts unique, though, is that

Continental had a pending catastrophic claim.  In the chart provided to the Court

detailing instances where the MCCA accepted late premiums, many of the late

payments were due to unintentional error.  Several others provide no reason at all.

Therefore, it is difficult to see how Continental is more culpable than any of these other

members whose late premium payments were accepted.  The only obvious

distinguishing factor is the presence of a catastrophic claim.

    Thus, MCCA appears to have an established practice of accepting late premiums

from its members, so long as the member does not have an outstanding catastrophic

claim.  The MCCA says there was only one occasion when it accepted a late payment

from a member with a pending claim.  In that case, though, the claimant was not

expected to breach the statutory threshold amount to trigger MCCA liability.  The

MCCA, therefore, did not assume any risk by accepting this late premium.

If the MCCA were permitted to accept late premiums when no catastrophic

claims are pending, but to reject late premiums when catastrophic claims are pending, it

would exercise a discretion that is not consistent with the concept of a mandatory

indemnification regime.  The Court believes that the Michigan Legislature did not

contemplate granting the MCCA the power to exercise discretion to refuse to accept late

premiums, only if catastrophic claims are pending which would trigger MCCA

indemnification.  The MCCA cannot pick and choose when to take on risk; this type of

discretion defeats the concept of spreading the risk.

**G.     Incentives Remain in Place for Members to Make Timely Premium Payments**

Finally, the Court emphasizes that it carefully considered the MCCA's argument

that a ruling adverse to the MCCA would cause member insurers to withhold premium

payments until a catastrophic claim is pending.  The Court rejects this argument.  Other

remedies are sufficient to prevent this scenario from coming to fruition.  The MCCA may

invoke the power of the Commissioner of Insurance, who could revoke or suspend

insurers' licenses.  The Court doubts members would knowingly risk forfeiting their

good-standing and jeopardize their ability to write policies, by intentionally withholding

premiums.  Second, the MCCA can audit any member at any time, and sue members

when appropriate.  Third, the Plan of Operation provides that interest on late premium

22

payments accrues at 1.5% per month (18% per year).  Section 11.01.  This penalty alone is likely sufficient to prevent members from intentionally withholding payment of premiums until catastrophic claims arise.

## IV.    CONCLUSION

Continental's motion for summary judgment is **GRANTED**.  The MCCA's motion for summary judgment is **DENIED**.  The case will proceed on the issue of whether Continental has suffered an ultimate loss warranting indemnification by the MCCA.  A Status Conference is set for **Tuesday, June 26, 2012 at 3:00 pm.**

**IT IS ORDERED.**

/s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  June 12, 2012

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 12, 2012. |
| S/Linda Vertriest |
| Deputy Clerk |